O2AHQueO

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   UNITED STATES OF AMERICA,

 4            v.                          24 Cr. 291 (LAK)

 5   MATTHEW QUEEN,

 6                                        Oral Argument
                   Defendant.
 7   ------------------------------x

 8
                                         New York, N.Y.
 9                                       October 2, 2024
                                         2:15 p.m.
10

11   Before:

12                     HON. LEWIS A. KAPLAN,

13                                        District Judge

14                          APPEARANCES

15   DAMIAN WILLIAMS
          United States Attorney for the
16        Southern District of New York
     BY:  JACQUELINE CHRISTINE KELLY
17        MARY CHRISTINE SLAVIK
          Assistant United States Attorneys
18
     SAM A. SCHMIDT
19        Attorney for Defendant

20

21

22

23

24

25
```

O2AHQueO

1           THE DEPUTY CLERK:  United States against Matthew

2    Queen.  Government, are you ready?  Can you please put your

3    appearance on the record.

4           MS. KELLY:  Yes.  Good afternoon, your Honor.

5    Jacqueline Kelly and Christy Slavik, for the government.

6           THE COURT:  Thank you.

7           THE DEPUTY CLERK:  Defendant, are you ready?

8           MR. SCHMIDT:  We are ready, your Honor.  Good

9    afternoon.  Sam Schmidt, for Matthew Queen.  Mr. Queen is

10   virtually here.

11          THE COURT:  Well, he's listening on the telephone is

12   what I understand.  Is that right?

13          THE DEPUTY CLERK:  And he can see on video as well.

14          THE COURT:  Yes, he's virtually here.

15          OK.  Mr. Schmidt, your motion.

16          MR. SCHMIDT:  Yes.  First, your Honor, I apologize

17   for ——

18          THE COURT:  The lectern, please.

19          MR. SCHMIDT:  Oh.

20          THE COURT:  I'll hear you better from there.

21          MR. SCHMIDT:  Your Honor, I do apologize for any

22   confusion with the exhibits.

23          THE COURT:  OK.  No worries.

24          MR. SCHMIDT:  Your Honor, this is actually a fairly

25   brief motion, and it's an unusual one, I acknowledge that.  But

O2AHQueO

1  in this case, the government has set forth what the crime was.

2  And in the present information, the crime is the false

3  documents given to the government with the intent to obstruct,

4  impede, influence on the investigation.

5      Now, in this case the physical documents that we're

6  talking about are the notes that Mr. Queen wrote at a time in

7  May and not at the time when he first told both the government

8  and others he wrote it.

9      THE COURT:  And not on the date which at the top of

10  the notes is contained ——

11      MR. SCHMIDT:  That is correct.

12      THE COURT:  —— written by him.

13      MR. SCHMIDT:  That is correct.

14      THE COURT:  So the date there —— I know you won't like

15  the word "false" —— but it's certainly inaccurate.

16      MR. SCHMIDT:  That is correct.

17      THE COURT:  All right.

18      MR. SCHMIDT:  The notes were given, with my

19  understanding, because I do not have —— unfortunately,

20  Mr. Queen's attorney at that time is deceased, but based on the

21  document that the government provided, which is notes by

22  Ms. Kelly of the conversation with the attorney on ——

23      THE COURT:  And those notes are not in the information

24  or the indictment, correct?

25      MR. SCHMIDT:  The notes are not in the information or

O2AHQueO

1    the indictment, but in the —— and I make the assumption that

2    the notes prepared by Ms. Kelly accurately reflect the

3    conversation that she had with the attorney.  Government has

4    not ——

5          THE COURT:  And so, best case, even granting the

6    assumption, it's hearsay.

7          MR. SCHMIDT:  It is hearsay, but it's hearsay as it ——

8          THE COURT:  It's actually double hearsay, but I'm

9    granting you the assumption, for the sake of discussion, that

10   Ms. Kelly accurately recorded what this now deceased person

11   told her, or at least what she understood that person to have

12   said, offered for the truth of what that person said.

13         MR. SCHMIDT:  Well, it's actually —— whether it's

14   offered for the proof or not is not actually relevant.  It's

15   actually offered for that it was said.  The reason why I say

16   that is that the basis of the government's charge is that the

17   physical notes that was given to them after this conversation

18   does not include the portion concerning what Employee-1 said,

19   the language that is the subject to the obstruction statute,

20   that being: "make this disappear," "we never had this meeting,"

21   and "this is the only copy that they have."  The reason is that

22   if you take the notes and include the statements made relating

23   to that conversation, that January 20 —— I don't remember the

24   exact date —— conversation when my client was present, right,

25   you have a document that is not false for the purpose of

1    obstructing ——

2            THE COURT:  No, you have a document that is false,

3    which is supposedly contradicted by another document that

4    doesn't even contain an account of the relevant facts.

5            MR. SCHMIDT:  It does contain the relevant facts.

6            THE COURT:  To wit?

7            MR. SCHMIDT:  The document that you're talking about,

8    which is the notes by the government of the conversation, it

9    includes the facts that the government indicates makes it

10   false.

11           THE COURT:  To wit, what is that fact?

12           MR. SCHMIDT:  The facts that Employee-1 did say this

13   needs to go away, that we didn't have this conversation, and

14   the only copy is the one you have —— and this is by Employee-2

15   —— the only one is the one you have on my computer.  Those are

16   the statements that were not included in the notes that the

17   government claims is false because of that.

18           THE COURT:  OK.

19           MR. SCHMIDT:  Now, it is, I think, clear now, under

20   the Rules of Evidence, that a document that is not complete can

21   be completed by oral statements.

22           THE COURT:  If what condition is satisfied?

23           MR. SCHMIDT:  That it's relevant.

24           THE COURT:  If it's necessary to accomplish a

25   particular purpose, right?

O2AHQueO

1          MR. SCHMIDT:  And the purpose is to fully understand.

2          THE COURT:  And who decides if it's necessary fully to

3    understand the document?

4          MR. SCHMIDT:  Well, the indictment.

5          THE COURT:  It's a preliminary question of fact, isn't

6    it, under Rule 104?

7          MR. SCHMIDT:  It would be if the information did not

8    define what made the document false.  The information defines

9    what makes the document false, and by defining it ⸺ but,

10   indeed, having that information prior to receiving the

11   document, it no longer is false, nor can it be material.  And

12   the government does leave out the requirement that the false

13   document be material.

14         THE COURT:  Well, the case you cited for the

15   proposition that the Second Circuit, in contrast to other

16   circuits, requires materiality does not remotely support that

17   proposition.  It isn't even close.

18         MR. SCHMIDT:  I respectfully disagree.

19         THE COURT:  Well, you're entitled, but that's my

20   reading of it.

21         MR. SCHMIDT:  The Second Circuit said that ⸺

22         THE COURT:  It was a case having to do with whether

23   there was a constructive amendment of the charging instrument,

24   and at the end of it, the Second Circuit said, in substance,

25   "and besides, it was obviously material," which is different

O2AHQueO

1    from a holding that materiality is an element of the offense.

2    And it had to do with the issue of constructive amendment, not

3    the sufficiency of the charging instrument.

4            MR. SCHMIDT:  Your Honor, the Court also stated that

5    by not requesting that the document had to be material, they

6    waived that argument.  Why would they — what would be the

7    purpose —

8            THE COURT:  Therefore, making whatever the Second

9    Circuit said on the issue of materiality dictum, unnecessary to

10   the result because the argument had been waived.  You're

11   absolutely right about that.

12           MR. SCHMIDT:  That is the only relevant decision on

13   this section, your Honor, by the Second Circuit.

14           THE COURT:  Yes, well, *Marbury v. Madison* doesn't help

15   you any more than that.

16           MR. SCHMIDT:  Well, it certainly seems to me it

17   indicates that it does, and the government, in their response,

18   did not oppose the need for materiality.

19           THE COURT:  It's quite possible because it's a red

20   herring in this case, on this motion.  Trial's another matter.

21   That issue was not foreclosed in the Second Circuit based on

22   the authority you cited to me.

23           MR. SCHMIDT:  I think it's persuasive, though.

24           THE COURT:  Well, the question is how much?

25           MR. SCHMIDT:  So there is no — so the issue, your

O2AHQueO

1    Honor, isn't whether it's a jury question.  It's actually more

2    of a legal question whether a document that is given to the

3    government that, for argument sake, is incomplete, leaving out

4    facts that the government believes is true, that is

5    supplemented by the facts that the government believes is

6    necessary prior to receiving that document means that that

7    document is not indeed incomplete nor false.  That's the

8    undisputed facts.  A jury does not need to make a determination

9    of any of that.  That is undisputed.

10        If your Honor finds that such a document, with the

11    statements made by the attorney before the document was given

12    to the government, is still — can still be false and that

13    there's another fact-finding to be needed, then —

14        THE COURT:  If the document was created earlier, as it

15    obviously had to have been for it to exist in the first place,

16    with the intent that it would impede the investigation by

17    creating the impression that those statements had not been

18    uttered in January, on the date the notes bear, and assuming

19    materiality is either satisfied or not necessary, isn't that a

20    crime?

21        MR. SCHMIDT:  The complicated factor in this case —

22    and, again, this may be a fact — is that, pursuant to a

23    subpoena in 2022, the seminary was required to turn over any

24    document that related to sexual harassment or sexual abuse.  So

25    the document itself was turned over because it was required to

O2AHQueO

1    be.

2                    THE COURT:  So?

3                    MR. SCHMIDT:  And not created to impact the

4    investigation.  That ——

5                    THE COURT:  My hypothetical, or my question, is

6    suppose the purpose of creating it was to impede the

7    investigation and that the creator believed at that time and

8    intended at that time that it would be turned over pursuant to

9    the subpoena for the precise purpose of impeding the

10   investigation, not knowing that maybe the lawyer would make the

11   statement on which you rely, assuming it was made in the first

12   place.  That's a crime under 1519, isn't it?

13                   MR. SCHMIDT:  Well, it's not knowing that the lawyer

14   would do that, and I guess then it's a factual question whether

15   he knew it, but the note —— that note themselves, I think,

16   makes it absolutely clear that he was told by Mr. Queen that

17   information.

18                   THE COURT:  The notes you're talking about are which

19   notes?

20                   MR. SCHMIDT:  The government notes of the

21   conversation.

22                   THE COURT:  Which didn't exist at the time I'm

23   inquiring about because the conversation hadn't even taken

24   place between the government and the lawyer.

25                   MR. SCHMIDT:  Then it's a factual issue that what ——

O2AHQueO

```
 1    what your Honor is saying, it's a factual issue why the notes
 2    were created themselves, and at that moment, that's a
 3    determination whether or not it's a violation of 1519; is that
 4    what your Honor is saying?
 5              THE COURT:  I'm not saying it's a factual issue.  I'm
 6    asking you to assume, for the sake of discussion, that it was
 7    created for the purpose of misleading the government as to what
 8    happened in that conversation and misdated, inaccurately dated,
 9    in order to promote the ability of the document to deceive the
10    government.  The crime, in other words, was complete long
11    before the documents were turned over, wasn't it, if it was a
12    crime at all?
13              MR. SCHMIDT:  The documents were actually created
14    subsequent to the conversation that Mr. ——
15              THE COURT:  In April, if I understand.
16              MR. SCHMIDT:  No, no, it was in May, and it was
17    subsequent to the conversation with the attorney.
18              THE COURT:  Subsequent to what conversation by whom
19    with the attorney?
20              MR. SCHMIDT:  Mr. Queen's conversation with the
21    attorney.  It was created afterwards and given to the attorney
22    afterwards.
23              THE COURT:  So is it your submission that what
24    happened is there are no documents up until the point where
25    Queen speaks to the attorney, and after he speaks to the
```

O2AHQueO

```
 1   attorney, he then creates these notes; he dates them in
 2   January, though he creates them in May; and he then gives them
 3   to the attorney, who then has the conversation with Ms. Kelly
 4   that you claim, and then turns over the notes?  Is that your ——
 5            MR. SCHMIDT:  That is correct.
 6            THE COURT:  That's your theory.
 7            MR. SCHMIDT:  That is correct.  It's correct because
 8   of the requirement that he turn over anything to do with any
 9   kind of sexual abuse claims, turn that over as well as other
10   documents that were made available to the government.
11            THE COURT:  So he created a false document in order to
12   further turning it over to the government?
13            MR. SCHMIDT:  No, he made a false document —— he made
14   a document ——
15            THE COURT:  With a false date.
16            MR. SCHMIDT:  —— to satisfy the need to turn over
17   something because he was required, or believed he was required,
18   under the subpoena.
19            THE COURT:  And because he had told several people
20   that he had contemporaneous notes?
21            MR. SCHMIDT:  And he told several people that he did,
22   yes.
23            THE COURT:  And that had been false, in your view?
24            MR. SCHMIDT:  I'm sorry?
25            THE COURT:  Your position is the statements he made to
```

O2AHQueO

1   others earlier that he had contemporaneous notes were false

2   statements?

3            MR. SCHMIDT:  That's correct.

4            THE COURT:  Because there were no contemporaneous

5   notes.

6            MR. SCHMIDT:  That is correct.  That is correct.

7            THE COURT:  OK.

8            MR. SCHMIDT:  The document ——

9            THE COURT:  Ultimately, your argument to the jury

10  might be —— I'm just playing lawyer for a minute —— the reason

11  the false date is on the notes, that you claim he put there

12  after talking to the lawyer, was to somehow reconcile the newly

13  created notes with his previous false statements to the other

14  employees that he had contemporaneous notes, which he never

15  had?

16           MR. SCHMIDT:  That is correct.

17           THE COURT:  You don't think there's an issue of fact

18  there, maybe just a little one?

19           MR. SCHMIDT:  Well, your Honor, there would be an

20  issue of fact if the information did not specify the nature of

21  the so-called false document.  It's very specific, and because

22  it's very specific and because it relates to being turned over

23  to the government, not actually the creation of it, it talks

24  about the crime being making it available to the government.

25  It does not say the creation of it.

O2AHQueO

1          THE COURT:  Anything else?

2          MR. SCHMIDT:  No, that's it, your Honor.

3          THE COURT:  OK.  Thank you.

4          Ms. Kelly.

5          MS. KELLY:  Your Honor, I plan to be very brief

6    today ——

7          THE COURT:  Feel free.

8          MS. KELLY:  —— and rely on our submission, which I

9    think lays out in more detail the points I want to make today.

10         I think defense counsel's presentation today

11   underscores exactly why this motion is inappropriate.  This is

12   not, while styled as a motion to dismiss, a motion to dismiss.

13   Mr. Schmidt is seeking a motion for summary judgment based on

14   facts that are far outside what is alleged in the four corners

15   of the information in this case.  That exact attempt has been

16   foreclosed by the case law in this circuit, which defense

17   counsel acknowledges in his motion, and I think just can't tap

18   dance around today.

19         As is well-established and well-known to your Honor,

20   the only requirements in a charging instrument —— an indictment

21   or, as here, an information —— is that the instrument track the

22   language of the statute charged and state the approximate time

23   and place of the offense so that it contains the elements of

24   the offenses charged and it provides adequate notice to the

25   defendant.  These requirements are set forth in the cases cited

O2AHQueO

in our opposition: *Stavroulakis, Vilar, Wedd*.

Second Circuit case law also says dismissal is a drastic remedy.  That's the *Walters* case.  Here, clearly, dismissal is not warranted.  The information meets all of these requirements:  The statutory allegations track the language of 1519, it contains all the elements of the offense, it states the approximate time and place of the offense, and it thus provides sufficient notice to the defendant of the charge against he must defend.

In his briefs, the defendant relies on cases that are not applicable.  Your Honor talked about one of them already with defense counsel.  He relies also on a case called *Yakou*. That's an out-of-circuit case from D.C. that recognized that a district court may dismiss an indictment based on a question of law where there's no timely objection made by the government. That's 420 F.3d at 247.  That is, obviously, far afield from the situation here.  The government has clearly made a timely objection to the facts that are asserted without support beyond the information.

And the question of dismissal is not a question of law.  There are numerous factual disputes, including the ones that your Honor just went through with defense counsel, and these are inextricably intertwined with the defendant's potential culpability in this case.  That quote, "inextricably intertwined with the defendant's potential culpability," that

1   comes from a case cited by the defendant, *Aiyer*, 33 F.4th at

2   116.  Indeed, in his motion and here today, the defendant is

3   relying on many facts that are outside the allegations in the

4   information.  Many of those are inaccurate or unsupported by

5   admissible evidence, but those are questions for another day.

6   Those are questions that will be presented to the jury at

7   trial.

8          As the government noted in our opposition, we're not

9   relying on any facts beyond those alleged in the information,

10  because those are the only ones relevant to the inquiry before

11  the Court today.  And critically, the government has not and

12  will not today make a full proffer of its evidence.  Therefore,

13  the information here is "not subject to a challenge based on

14  the quality or quantity of evidence."  That's the *Alfonso* case,

15  143 F.3d at 776.

16         THE COURT:  What is the government's position on

17  whether materiality is an element?

18         MS. KELLY:  The government's position is, with respect

19  to omissions, there is case law supporting that the omission

20  must be material with respect to the falsity element.  However,

21  with respect to an affirmative false statement, it is not the

22  government's position that materiality is required, and as your

23  Honor noted, that requirement is not supported by Second

24  Circuit case law, and the case that the defendant cites does

25  not stand for that proposition.

O2AHQueO

```
1          THE COURT:  Is the only respect in which the
2   government claims falsity the alleged omission, or do you rely
3   also on the misdating or anything else?
4          MS. KELLY:  So the government alleges two things in
5   the information:  First, that the notes were purportedly
6   contemporaneous notes, and that's in paragraph 7 of the
7   information; and second, with respect to the omission, that the
8   notes leave out a portion, an important portion, of the
9   conversation that the defendant had heard.  So it relies on
10  those two allegations to support that element of the crime.
11         THE COURT:  So it's the misdating and the omission?
12         MS. KELLY:  That's correct, your Honor.
13         THE COURT:  OK.  Anything else?
14         MS. KELLY:  Nothing, your Honor, unless you have
15  further questions.
16         THE COURT:  No, I don't.  Thank you.
17         Mr. Schmidt, anything else?
18         MR. SCHMIDT:  Briefly, your Honor.
19         THE COURT:  Sure.
20         MR. SCHMIDT:  The only portion that supports what your
21  Honor was discussing, the materiality, is the purported date
22  that it was prepared as being affirmatively false.  It would
23  seem unreasonable to avoid the need for materiality where the
24  primary basis is that the information is not complete to make
25  it a false document.  Logically, if the date was wrong but all
```

O2AHQueO

```
 1    of the information in the document was correct, to find that

 2    that was a false document would not be reasonable or logical if

 3    the document was complete and accurate.

 4              THE COURT:  Sure, it is.  It could be because the

 5    whole point is that the document would be entitled to greater

 6    credence as to what it stated substantively by virtue of the

 7    fact that it was contemporaneous, and that indeed is why, no

 8    doubt — I shouldn't say "no doubt" — but that is certainly a

 9    basis on which one could conclude that that's why they were

10    misdated in the first place.

11              MR. SCHMIDT:  Well, in this case, your Honor, it's if

12    the document was complete, as indicated by the statements made

13    by the attorney.  But, say, if it was in the document itself,

14    since that was the nature of the investigation and it was

15    supportive of the investigation, then it would not be seeking

16    to influence it in any way.

17              THE COURT:  Then there would be no omission.  But if

18    it were not helpful to the investigation but, rather,

19    exculpatory, the degree to which it was exculpatory would

20    depend, in no small measure, on the fact that they were

21    purportedly contemporaneous notes.

22              MR. SCHMIDT:  I don't disagree with that.

23              THE COURT:  OK.

24              MR. SCHMIDT:  But that's not the situation both in

25    this case, so it's —
```

O2AHQueO

1          THE COURT:  Yes, it is, because your position is that
2     they were complete.
3          MR. SCHMIDT:  My position was that it was complete ——
4          THE COURT:  Yes.
5          MR. SCHMIDT:  —— in the manner that assisted the
6     investigation and did not obstruct the investigation.
7          THE COURT:  OK.  I think I have your argument.
8          The motion is denied.  It's a motion for summary
9     judgment in sheep's clothing, to mix the metaphor.  There are
10    clearly issues of fact.  I'm not entitled to resolve them now.
11    The motion depends on material outside the four corners of the
12    information.  The rule of completeness does not help the
13    defense here at all.  The rule of completeness applies to the
14    receipt of evidence at trial or on a motion for summary
15    judgment, and that's not what we're dealing with.  Furthermore,
16    I accept the arguments contained in the government's
17    memorandum, which I'm not going to bother restating in total.
18         Mr. Schmidt, defense counsel sometimes lose cases or
19    arguments, not because they didn't do a good job, but because
20    the facts or the law are against them.  You and I have been
21    doing this together on occasion for a very long time, and I
22    have the greatest respect.  I understand you work with what
23    you've got, and that's all there is to say about it.  I mean,
24    you win some; you lose some.  You suit up for them all.
25         Now, trial is now set for November 13 at 9:30.  Is it

1    going to happen?  Obviously, nobody's bound by an answer, but I

2    want to have an indication.

3        MR. SCHMIDT:  Your Honor, it requires me to raise a

4    particular issue now.  The government has informed me that they

5    will be superseding the information with an indictment,

6    including a 1001 charge.  I have received what the government

7    has purported to be 3500 material and *Giglio* material, some of

8    which also includes, in my mind, *Brady* material.  However, I

9    received it for attorneys' eyes only.

10        At this point, not being able to discuss with my

11    client the substance of much of the material in there, now

12    knowing that a 1001 charge is coming, makes it impossible for

13    me to discuss with him whether we are indeed going to be

14    proceeding to trial on November 13.  Therefore, for me to

15    actually act as his attorney in every respect, I request that

16    the material no longer be attorneys' eyes only.  That it can be

17    under the protective order, but that I can discuss and show my

18    client the material that is in there so he can make a decision

19    with all the information available on whether we're going to

20    proceed to trial on November 13.

21        THE COURT:  Well, I understand your point.  Have you

22    discussed this with the government yet?

23        MR. SCHMIDT:  I raised it with them, but I haven't

24    gotten an answer as to when I'll be able to review this with

25    apply client because I did just find out about the 1001 charge

1    that is expected.

2                 THE COURT:  What's the schedule, Ms. Kelly, on the

3    superseder?

4                 MS. KELLY:  Well, your Honor, the government intends

5    to do two things in short order:  We do intend to supersede to

6    add a 1001 charge based on the defendant's false statements in

7    his Fort Worth interview with the government in May of 2023 and

8    in his New York interview on June 20 of 2023.  We also, as

9    previewed for defense counsel ⸺ I think it's no secret in this

10   case that the government has made efforts to resolve the case,

11   and we would like to make a plea offer to the defendant, and we

12   intend to do that.  We've advised defense counsel that, to the

13   extent that there should be further discussions on that, we

14   should do that as quickly as possible and that we intend to

15   supersede.  So I expect that both of those things, the plea

16   offer and the superseder, will be accomplished in the next two

17   weeks, your Honor.  There's no additional discovery.

18   Everything is contained in what we've already produced.

19                 And with respect to the 3500, as your Honor knows,

20   there have been issues with the protective order in this case.

21   All of the witnesses, or the vast majority of the witnesses in

22   this case, are people well known to the defendant, and the

23   government has concerns about, even under the protective order,

24   how the material will be treated.  We don't object, obviously,

25   to the defendant having ample time to consult with his attorney

O2AHQueO

1  about the 3500 material, but without knowing what the trial

2  date in the case is going to be, it's difficult to agree to it

3  being turned over.  We turned it over to the defense early

4  without a schedule set by the Court, both so that would

5  facilitate these discussions about a resolution and also so

6  that there is ample time to consider that information.

7          MR. SCHMIDT:  If I may, your Honor?

8          THE COURT:  Just a minute.

9          When do you intend to file and unseal any superseding

10  indictment?  Because you know the speedy trial clock prevents

11  you from going to trial on November 13 if you don't supersede

12  till 29 days before the trial date.

13          MS. KELLY:  Yes, your Honor.  So we have scheduled

14  grand jury time for the week of the 14th.  The 14th is a court

15  holiday, and this grand jury sits on days that implicate that.

16  But we expect to go to grand jury that week.

17          THE COURT:  Well, is that going to be in time?

18          MS. KELLY:  It's butting up to the date, your Honor,

19  but it is that same week.

20          THE COURT:  Yes, I understand, but is it butting up to

21  it from the too late side or from the too early side?

22          MR. SCHMIDT:  November has 30 days.

23          MS. KELLY:  I think we can make it work, your Honor.

24  It will be within the 30 days.

25          THE COURT:  OK.

O2AHQueO

1          MR. SCHMIDT:  If I may, your Honor?

2          THE COURT:  Yes, please.

3          MR. SCHMIDT:  Mr. Queen, or his wife or anyone else

4    he's in contact with, has not had a single conversation,

5    attempt to have a single conversation with any of the

6    witnesses.

7          THE COURT:  Yes, but let me interrupt.  The first

8    thing that needs to happen is you and the government need to

9    have a serious conversation about this and see whether you

10   can't resolve it on your own.  I'm not as well situated as

11   either of you to decide what you should be able to do and what

12   you shouldn't.  At least get to the point where you've either

13   resolved it or have some finite issue for me to deal with.

14         MR. SCHMIDT:  I will do that very quickly, your Honor.

15         THE COURT:  Well, it's in everybody's interest that

16   you do.  And I'm talking to both of you, not just to you,

17   Mr. Schmidt.  You need to get moving on this.

18         Now, if we are going to trial, how long a trial is

19   this?

20         MS. KELLY:  The government's case is less than a week,

21   your Honor.

22         THE COURT:  How many days?

23         MS. KELLY:  Approximately four.

24         THE COURT:  Any forecast from the defense as to how

25   long, if at all, you would be if the case goes to trial?

O2AHQueO

1    MR. SCHMIDT:  I could say that, at most, it would be

2    two days.  The issue that's problematic is that the witnesses

3    are not in the Southern District of New York, nor nearby.  The

4    potential witnesses are either in Florida or in Texas.

5    THE COURT:  Well, you're going to have to deal with

6    that.

7    MR. SCHMIDT:  I understand that, but it does ——

8    THE COURT:  You know my proposition is somebody runs

9    out of witnesses, they're done.

10    MR. SCHMIDT:  I understand that, your Honor.

11    THE COURT:  It's a tough time of the year also, both

12    for travel, holidays.  So we're going to need to do it

13    consecutive days.  Not Fridays, but consecutive days.

14    Anything else?

15    MR. SCHMIDT:  Your Honor, if we're going to trial, an

16    *in limine* motion that we would be preparing would impact

17    whether or not we need to bring up a witness from out of town.

18    Normally, I see from your rules that *in limine* motions need to

19    be filed ten days before the beginning of trial.  I'm assuming

20    that it has to be by ten days before trial.  Then I can file

21    that sooner?

22    THE COURT:  Oh, yes, sure.  Absolutely.  Absolutely.

23    Thanks, folks.

24    MR. SCHMIDT:  Thank you.

25    (Adjourned)